FILED
2020 Feb-25  AM 09:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **STEPHEN LAMBERT; CHERYL LAMBERT,** ) | |
| ) | |
| ) | **CASE NO.:** |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **JURY TRIAL DEMANDED** |
| ) | |
| **NATIONAL BROKERS OF** ) | |
| **AMERICA, INC.; ALBERT GROFF;** ) | |
| **ADROIT HEALTH GROUP LLC;** ) | |
| **NATIONAL GUARDIAN LIFE** ) | |
| **INSURANCE COMPANY; USAA** ) | |
| **CASUALTY INSURANCE** ) | |
| **COMPANY;** ) | |
| **Defendants.** | |

## COMPLAINT

COMES NOW the Plaintiffs, Stephen Lambert and Cheryl Lambert, by and through their undersigned counsel of record, and file this Complaint against the Defendants, National Brokers of America, Inc. ("NBOA"), Albert Groff ("Groff"), Adroit Health Group LLC ("Adroit"), National Guardian Life Insurance Company ("NGL"), and USAA Casualty Insurance Company ("USAA"), and in support thereof would show as follows:

## PARTIES

1.      Plaintiff, Stephen Lambert, was at all times relevant hereto an individual over the age of nineteen (19) years and a resident citizen of Shelby

County, Alabama.

2.      Plaintiff, Cheryl Lambert, was at all times relevant hereto an individual over the age of nineteen (19) years and a resident citizen of Shelby County, Alabama.

3.      Defendant NBOA is a foreign corporation organized and existing under the laws of the state of Ohio having its principal place of business located at 2525 North 12th Street, Suite 390, Reading, PA 19605 and conducts business throughout the United States.  Defendant NBOA conducts business by agent in Shelby County, Alabama.

4.      Defendant Albert Groff is a resident citizen of the state of Pennsylvania over the age of nineteen (19) years.

5.      Defendant Adroit is a foreign limited liability company organized and existing under the laws of the state of Texas having its principal place of business located at 1575 Heritage Drive, Suite 200, McKinney, Texas 75126 and conducts business throughout the United States.  Defendant Adroit conducts business by agent in Shelby County, Alabama.

6.      Defendant NGL is a foreign corporation organized and existing under the laws of the state of Wisconsin having its principal place of business located at 2 East Gilman Street, Madison, WI 53703 and conducts business throughout the United States.  Defendant NGL conducts business by agent in Shelby County, Alabama.

7.      Defendant USAA is a foreign corporation organized and existing under

the laws of the state of Texas having its principal place of business located at 9800 Fredericksburg Road, San Antonio, TX 78288 and conducts business throughout the United States.  Defendant USAA conducts business by agent in Shelby County, Alabama.

8.     Upon information and belief, at all times herein mentioned, the employees of the Defendants, were the agents, servants and employees of Defendants, and at all relevant times, were acting within the purpose and scope of said agency and employment. Whenever reference in this Complaint is made to any act or transaction of the Defendant, such designations shall be deemed to mean that the principals, officers, employees, agents, and/or representatives of the Defendant committed, knew of, performed, authorized, ratified and/or directed such transactions on behalf of the Defendant while actively engaged in the scope of their duties.

<u>**JURISDICTION AND VENUE**</u>

9.     This Court has jurisdiction pursuant to 28 U.S.C. §1332(a) based upon the complete diversity of the parties. The amount in controversy exceeds, exclusive of interest and costs, the sum of $75,000.00.

10.    Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred within this judicial district, and Plaintiffs reside within this district. Specifically, the subject insurance policy was sold to persons residing in this district

and the subject insurance claims occurred within this district. Defendants conduct business in this judicial district to include, but not limited to, the brokerage and/or sale of health insurance.

## FACTS COMMON TO ALL COUNTS

11.     Stephen Lambert and Cheryl Lambert are married.

12.     On February 20, 2018, Stephen Lambert called USAA to inquire about obtaining new medical insurance coverage for his family.

13.     After advising USAA that he was looking into replacing his "major medical" Blue Cross Blue Shield of Alabama ("BCBS") health insurance with a policy containing equivalent coverage but with lower premiums, USAA transferred his call to insurance agent Albert Groff, an employee of NBOA based out of Pennsylvania.

14.     Groff represented himself as an agent working for a small brokerage company that handles USAA's health insurance.

15.     On the same call, Groff represented that he could provide Stephen and Cheryl significant savings on their existing health insurance costs by switching them to a health insurance policy underwritten by NGL and administered by Adroit.

16.     Stephen Lambert told Groff that he and Cheryl wanted to purchase a policy with similar coverages to the coverages he had with BCBS at the time.

17.     Groff quoted a price of $1085.61 per month for family dental, vision, medical, and prescription coverage.

4

18.     Stephen and Cheryl decided to continue researching and did not purchase a policy from Groff on February 20, 2018.

19.     Stephen and Cheryl called Groff back on February 21, 2018 to further question Groff about the health insurance coverage he was attempting to sell them.

20.     When the Lamberts requested a copy of the summary of benefits prior to purchase, Groff instead advised the Lamberts that the quoted price would only be valid for a short time period, but that they would receive all the policy documents after purchasing.

21.     During this time period, Stephen Lambert's ex-wife had asked Stephen to help her obtain health insurance coverage as well, since he was already doing the research.

22.     Stephen's ex-wife purchased a policy from Groff at that time, and the Lamberts were able to review those policy documents.

23.     When the Lamberts reviewed the purported "summary of benefits" for the ex-wife's new health insurance policy on February 24, 2018, it did not appear to them to provide the coverages that Groff had represented to them that it did.

24.     After their review, the Lamberts called Groff to discuss their concerns.

25.     On this call, the Lamberts questioned Groff about whether the policy would provide coverage for certain hypothetical, medical scenarios that the Lamberts had experienced in the past and for which their BCBS policy had provided full coverage.

26.    In particular, the Lamberts questioned Groff regarding several specific hypothetical coverage scenarios based on their prior medical history. They asked Groff whether the insurance policy he was selling them would cover:

    a.  Kidney Surgery;

    b.  Spinal fusion after a slipped disc;

    c.  Yearly MRIs and CT scans;

    d.  Tricep surgery;

    e.  Maternity care;

    f.  Thyroid care; and

    g.  Sleep apnea.

27.    Groff assured the Lamberts that, even though the "summary of benefits" possessed by the Lamberts did not appear to provide coverage for the above medical treatments, other documents containing the entire coverage descriptions would be sent to them in the mail that would confirm that the treatments discussed and other major medical treatments would be covered under the policy he was selling them.

28.    To date, the Lamberts have never received any other documentation showing additional coverages, including coverage for the hypothetical scenarios above.

29.    That same day, the Lamberts spoke to another agent of NBOA, William Corchado, who corroborated Groff's representations that the hypothetical treatment

scenarios discussed with Groff and similar major treatments would be covered by the health insurance sold by Defendants.

30.    The Lamberts took detailed, contemporaneous notes of their phone calls with NBOA staff.

31.    Based on the representations of the NBOA brokers Groff and Corchado, the Lamberts for valuable consideration purchased a health insurance policy, #LM6730900007 ("Policy"), for themselves in Shelby County and cancelled the coverage under their BCBS policy.

32.    The Policy they purchased went into effect on March 1, 2018.

33.    The Policy is underwritten by NGL Insurance Company.

34.    On March 10, 2018, Stephen was in a significant all-terrain vehicle accident. He broke one of his cervical vertebrae and was transported to a free-standing emergency room. The emergency room was not equipped to handle trauma injuries like the one Stephen sustained, so he was then transferred via ambulance to UAB Hospital, where he was hospitalized and treated for three days.

35.    Because of the accident, Stephen incurred incur approximately $48,032.80 in medical bills.

36.    Only a tiny fraction of Stephen's bills was paid under the Policy that the Lamberts purchased from NBOA and the other Defendants.

37.    When the Lamberts learned from their medical providers that almost none of the bills would be covered by the Policy that they were assured would

provide coverage comparable to their previous major medical BCBS policy, the Lamberts attempted to contact NBOA to determine the problem.

38.     The original sales agents, Groff and Corchado, would not answer the phone.

39.     Eventually, they were able to make contact with NBOA's "member services." Member services repeatedly advised the Lamberts to contact their agents with any questions.

40.     The Lamberts continued to try to contact their agents, leaving more than seven voicemails from approximately March 23, 2018 to April 2, 2018.

41.     Finally, a "Kathy" in member services suggested that NBOA did not have a policy on file for the Lamberts. After the Lamberts assured her that they did, Kathy then stated that they did not have medical coverage. Finally, Kathy stated that they did not have major medical coverage until November 2018 and hung up on the Lamberts. The Lamberts could never get Kathy back on the phone.

42.     They did reach a "Ken" in member services, who created a ticket number for them and told them that someone would call them back within 24-48 hours.

43.     The Lamberts, to this day, have not heard from an agent of NBOA regarding their policy after they were informed by Stephen's medical providers that practically none of his bills were covered under the Policy.

44.     Defendants USAA, NGL, and ADROIT were involved and complicit

in this scheme to fraudulently entice consumers to switch from full, comprehensive health insurance coverage to health insurance policies that did not provide full, comprehensive health insurance coverage contrary to the representations of Defendants and their agents, including NBOA, that the policies included the same or similar coverages. Plaintiffs were the victims of this scheme and have suffered tremendously.

45.     Specifically, USAA, NGL, and ADROIT used the services of NBOA to engage in a pattern and practice of defrauding consumers by deceiving consumers into believing that the health insurance policies they were selling were ACA-compliant, full, comprehensive health insurance policies when the Defendants knew that the health insurance policies they were selling were not, in fact, ACA-complaint, full, comprehensive health insurance policies.

46.     In fact, in numerous states across the country, NBOA was investigated and penalized by various state insurance commissions for defrauding consumers in the same manner that they have defrauded Stephen and Cheryl Lambert. In Oregon, Nebraska, South Dakota, Washington, and Pennsylvania, NBOA was fined and/or prevented from selling insurance in those states permanently.

47.     Defendants NGL, Adroit, and USAA knew or should have known that NBOA and its agents were the subjects of investigations and were being punished by insurance regulators across the country for defrauding consumers.

48.     Based on that knowledge, Defendants NGL, Adroit, and USAA should

not have engaged NBOA and its agents to market their health insurance products, like the Policy that was sold to the Lamberts.

## COUNT I
## NEGLIGENT AND WANTON FAILURE TO OBTAIN INSURANCE

49.     Plaintiffs repeat and incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

50.      Plaintiffs purchased health insurance from Defendants to protect themselves from the very situation they now find themselves in: crushing debt from catastrophic medical bills.

51.     Defendants and their agents represented and even assured Plaintiffs that policy number LM6730900007 would provide full, comprehensive health insurance coverage equivalent and/or similar to the BCBS policy Plaintiffs were covered by prior to switching insurance based on the misrepresentations of Defendants and their agents.

52.     Plaintiffs paid a premium that reflected that the policy would provide coverage and protect them from the catastrophic losses they have experienced.

53.     After claims were filed under the Policy, Plaintiffs were informed that the policy Defendants sold them provided practically no coverage for the medical bills Stephen incurred.

54.     In fact, the Lamberts still owe approximately $48,032.80 in medical bills—bills they expected and believed would be covered by the Policy based on the

representations made by Defendants.

55.     Defendants and their agents failed to provide a policy to the Lamberts that included the health insurance coverages that they requested, and that Defendants represented and assured them were included in the Policy.

56.     Defendants and their agents failed to use the care, skill, and diligence that a reasonable and prudent insurance company, brokerage, or agent would have used in a similar circumstance.

57.     Because of the Defendants' actions and conduct, Stephen Lambert and Cheryl Lambert have huge amounts of outstanding medical debt that they otherwise would not owe and have suffered severe mental anguish and emotional distress.

WHEREFORE, Plaintiffs request that the jury selected to hear this case render a verdict in their favor, and against the Defendants and that it award damages to them in an amount which will adequately compensate them for the injuries and damages sustained due to the Defendants' conduct. Also, on the basis of the foregoing, Plaintiffs request that a jury be selected to hear this case and render a verdict for Plaintiffs, and against the Defendants, and that it award exemplary damages to Plaintiffs in an amount which will adequately reflect the enormity of the Defendants' wrong, and prevent others similarly situated from engaging in similar acts. Further, Plaintiffs request that the Court enter judgment consistent with the jury's verdict, and that it also award the Plaintiffs interest from the date of judgment and the costs incurred by the Court in managing this lawsuit.

11

## COUNT II
## FRAUDULENT MISREPRESENTATION, INDUCEMENT, AND SUPPRESSION

58.     Plaintiffs repeat and incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

59.     After the Lamberts completed their application for health insurance coverage with Defendants, Defendants and their agents represented to and assured the Lamberts that they would have comprehensive, full health coverage comparable to the BCBS insurance they previously had.

60.     As previously discussed in detail, Defendants and their agents represented to and assured the Lamberts that the Policy would provide coverage for medical bills incurred as a result of accidents such as the one Stephen Lambert was in, which was not true.

61.     The Lamberts relied on Defendants' misrepresentations when they purchased the policy, to their detriment.

62.     Prior to the Lamberts purchasing the Policy, Defendants and their agents knew that the Policy would not provide the same or similar coverages that the Lamberts' BCBS policy provided, as was represented to the Lamberts by the Defendants.

63.     Defendants and their agents suppressed this knowledge from the Lamberts in order to fraudulently induce the Lamberts into purchasing, essentially, worthless insurance coverage.

64.   If Defendants had not suppressed this knowledge and made misrepresentations about the Policy, the Lamberts would not have purchased the Policy from Defendants.

65.   Because of Defendants' fraudulent misrepresentations and suppressions that induced the Lamberts to purchase a health insurance policy that did not provide the coverage the Lamberts requested, Stephen Lambert and Cheryl Lambert huge amounts of outstanding medical debt that they otherwise would not owe and have suffered severe mental anguish and emotional distress.

WHEREFORE, Plaintiffs request that the jury selected to hear this case render a verdict in their favor, and against the Defendants and that it award damages to them in an amount which will adequately compensate them for the injuries and damages sustained due to the Defendants' conduct. Also, on the basis of the foregoing, Plaintiffs request that a jury be selected to hear this case and render a verdict for Plaintiffs, and against the Defendants, and that it award exemplary damages to Plaintiffs in an amount which will adequately reflect the enormity of the Defendants' wrong, and prevent others similarly situated from engaging in similar acts. Further, Plaintiffs request that the Court enter judgment consistent with the jury's verdict, and that it also award the Plaintiffs interest from the date of judgment and the costs incurred by the Court in managing this lawsuit.

## <u>JURY DEMAND</u>

Plaintiffs herein demand a trial by jury on all issues.

Dated: February 24, 2020                      Respectfully submitted,

*/s/ Austin Whitten*
Austin Whitten (WHI165)
Chris T. Hellums (HEL012)
**PITTMAN, DUTTON & HELLUMS, P.C.**
2001 Park Place North
Suite 1100
Birmingham, AL 35203
Tel: (205) 322-8880
Fax: (205) 328-2711
Email: austinw@pittmandutton.com
Email: chrish@pittmandutton.com

*/s/ Brett W. Aaron*
Brett Aaron (AAR006)
**HARRIS & ASSOCIATES LAW, LLC**
3021 Lorna Road, Suite 301
Hoover, AL 35216
Tel: (205) 940-2233
Fax: (205) 822-3522
Email: brett@abogadoscentrolegal.com

*Attorneys for Plaintiff*

**<u>PLEASE SERVE DEFENDANTS BY CERTIFIED MAIL AS FOLLOWS:</u>**

NATIONAL BROKERS OF AMERICA, INC.
2525 North 12th Street, Suite 390
Reading, PA 19605

ALBERT GROFF
11 Sabrina St.
Wernersville, PA 19565

ADROIT HEALTH GROUP LLC
c/o CORPORATION SERVICE COMPANY INC.
641 South Lawrence Street
Montgomery, AL 36104

NATIONAL GUARDIAN LIFE INSURANCE COMPANY
c/o CT CORPORATION SYSTEM
2 North Jackson Street, Suite 605
Montgomery, AL36104

USAA CASUALTY INSURANCE COMPANY
c/o Corporation Service Company, Inc.
641 South Lawrence Street
Montgomery, AL 36104